UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

**CIVIL ACTION NO. 05-97-JBC**

**BRUCE L. HATTON,**                                                                         **PLAINTIFF,**

**V.**                    **MEMORANDUM OPINION AND ORDER**

**UNITED PARCEL SERVICE,**                                    **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendant's motion for summary judgment. The court, being duly advised, will grant the motion.

**Background:**

This is an action for employment discrimination and retaliation under the Kentucky Civil Rights Act ("KCRA"). The plaintiff, Bruce Hatton, alleges that he was fired as a delivery truck driver for the United Parcel Service ("UPS") because he is disabled, and that UPS retaliated against him for exercising a protected right. The following facts are presented in the light most favorable to Hatton, who is the non-moving party. *Adickes v. S.H. Kress*, 398 U.S. 144, 157 (1970).

In 2002, while working for UPS, Hatton injured his back while attempting to lift a package. Accordingly, he applied for, and received, worker's compensation benefits. As a condition of the continued receipt of benefits, Hatton was required to be under a doctor's care. On August 21, 2003, Hatton missed a scheduled doctor's appointment, causing UPS to question whether he was still under a doctor's care. When an employee misses a doctor's appointment, UPS's standard practice is to send a "72-hour letter," which is a certified letter requiring the employee to provide medical documentation to

justify his continued absence from work. The employee must respond to the letter within 72 hours of receiving it. Failure to respond to the letter may result in termination.

On September 2, 2003, UPS sent Hatton such a 72-hour letter, which was returned as "refused."[1] On September 10, UPS fired Hatton for failing to respond to the letter. However, Hatton did not learn that he had been fired until September 23. Two days later, on September 25, pursuant to the terms of a collective bargaining agreement, Hatton filed a grievance through his union, which was ultimately denied as untimely. Hatton subsequently applied for unemployment benefits and, although his claim was initially denied, he eventually received them.

**Standard of Review:**

"Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In deciding the motion, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. A judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* The initial burden of showing the absence of a genuine issue

---

[1] The parties disagree whether Hatton actually received the letter. Hatton claims that he was not at home when the certified letter was delivered and that a friend of his, Tom Yeager, refused delivery of the letter. UPS, relying on the mail carrier's affidavit, claims that Hatton was handed the letter, but, when he saw the return address, refused to accept it.

of material fact is on the moving party. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the opposing party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**Discrimination:**

Disability discrimination under the KCRA[2] requires that the plaintiff initially prove five things: (a) that he is an individual with a disability; (b) that he is otherwise qualified to perform the essential job requirements, with or without reasonable accommodation; (c) that the employer knew about the disability; (d) that he suffered an adverse employment action; and (e) that after termination he was replaced. *Swanson v. Univ. of Cincinnati*, 268 F.3d 307, 314 (6th Cir. 2001). After the plaintiff makes his *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1185-86 (6th Cir. 1996). If the employer meets this burden, the burden shifts back to the plaintiff to show that the proffered reason is a pretext for discrimination. The plaintiff can show pretext by arguing that the proffered reason has no basis in fact; that it did not actually motivate the employer's decision; or that it was never used in the past to discharge an employee. *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998).

UPS argues that it had a legitimate, nondiscriminatory reason for terminating Hatton. Specifically, it claims that it fired Hatton because Hatton failed to respond to a

---

[2] Because the language of the KCRA tracks that of the Americans with Disabilities Act ("ADA"), a claim under the KCRA may be analyzed by reference to the ADA. *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 520 (6th Cir. 1998).

3

72-hour letter.[3] UPS urges the court to apply the "honest belief" rule, which holds that "so long as the employer honestly believed in the proffered reason given for its employment action, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Smith*, 155 F.3d at 806. Although the employer's decision must be reasonably grounded on the specific facts before it, the employer need not conduct an exhaustive investigation to verify those facts before making an employment decision. *Id.* at 807-08. Once the employer has satisfied this burden, the employee has the opportunity to show that the employer could not have, in good faith, based its decision on a particular set of facts: "if the employer has made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so." *Id.* at 807. *See also Pesterfield v. Tennessee Valley Auth.*, 941 F.2d 437, 443 (6th Cir. 1991).

In this case, UPS sent Hatton a certified letter asking Hatton to justify his continued absence from work. This letter was returned as refused. Hatton argues that he never received the letter and that UPS was required to take additional steps to discover whether he was under a doctor's care.[4] However, he cites no authority that imposes this duty on UPS. Rather, when the letter was returned as "refused," it was reasonable for UPS to assume that Hatton was not interested in communicating with

---

[3] UPS also argues that Hatton cannot make a prima facie case of disability discrimination and that his claims are preempted by the Labor Management Relations Act. Because it is not necessary to address these issues to resolve the instant motion, the court will not do so.

[4] Hatton argues that UPS should have sent the letter "restricted"; that UPS should have contacted his attorney or followed the letter with a phone call; and that UPS should have checked to see whether the appointment had been reset.

his employer. This assumption is reasonable even if, as Hatton claims, he never received the 72-hour letter. Applying the honest-belief rule to these facts, UPS has shown a legitimate nondiscriminatory reason for its actions. Hatton, however, has not shown that UPS's reliance on these facts was unreasonable. Therefore, UPS is entitled to judgment as a matter of law. Moreover, as UPS terminated at least 25 other employees in Kentucky for failing to respond to similar letters, Hatton cannot claim to be the victim of a seldom-used procedure.

**Retaliation:**

Hatton argues that UPS retaliated against him by refusing to pay worker's compensation benefits and by refusing his application for unemployment. An employer may challenge a former employee's application for unemployment benefits without running afoul of anti-retaliation laws. Reasonable legal positions, without more, do not constitute retaliation. *Roman v. Cornell Univ.*, 53 F. Supp. 2d 223, 245 (N.D.N.Y. 1999); *Kowalski v. Kowalski Heat Treating, Co.*, 920 F. Supp. 799, 805 (N.D. Ohio 1996). Nor does an employer retaliate by informing a state agency that an employee was terminated for cause. *See* 787 KAR 1:060 § 2.

UPS argues that it did not refuse to pay worker's compensation benefits. Rather, it informed the Kentucky Unemployment Commission that Hatton had been discharged for refusing a 72-hour letter and that the Unemployment Commission terminated Hatton's benefits. Additionally, UPS argues that it objected to Hatton's claim for unemployment benefits in good faith. As Hatton has produced no evidence challenging these positions or suggesting an issue of material fact, UPS is entitled to summary

judgment. Accordingly,

**IT IS ORDERED** that the defendant's motion for summary judgment (DE 28) is **GRANTED**.

**IT IS FURTHER ORDERED** that the pretrial conference and the trial are **CANCELED** and that this matter is **STRICKEN** from the court's active docket.

Signed on July 7, 2006

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY